**George MATHIS Jr., Appellant,**

v.

**RKL DESIGN/BUILD, Appellee.**

**No. 01–04–01318–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 19, 2006.

Robert Joseph Killeen Jr., Houston, TX, for Appellant.

Raymond A. Krell, Daniel L. McKay, Krell & Troigian, Feichtinger M. Bruce, and Vicki L. Pinak, Watson, Kowis & Rossick, Houston, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

TIM TAFT, Justice.

Appellant, George Mathis Jr., appeals from a summary judgment entered in favor of appellee, RKL Design/Build ("RKL"). We determine whether the trial court erred in its summary judgment rul-ing. We affirm the judgment of the trial court.

### Facts

James Petersen,[1] owner of the property at 110 Milam ("the Petersen property"), hired RKL to perform a preliminary evaluation in connection with the possible conversion of an existing four-story commercial building to residential use. Petersen requested that RKL prepare a set of architectural plans and obtain construction bids from commercial contractors to determine if such a conversion would be cost-effective. RKL requested construction bids from G.T. Leach Construction ("GTL"), Braselton Construction Company ("Braselton"), and Tribble & Stephens General Contractors ("T & S"). In order to complete their bids, GTL, Braselton, and T & S requested keys to the property. After obtaining Petersen's permission, RKL provided the keys. T & S requested that Mathis provide a bid for wrought-iron work to be completed at the Petersen property.

On October 30, 2001, a representative from T & S accompanied Mathis onto the Petersen property. While walking the perimeter of the building, Mathis fell into a hole that was 12 feet deep and covered by a thin piece of wood. Mathis sustained injuries to his head, neck, and torso as a result of the fall. Before the date of Mathis's injury, Restoration Builders, Incorporated ("Restoration") had been the primary contractor involved in the stabilization phase, which included demolition activity and removal of debris from the Petersen property. Mathis sued RKL, Restoration, Petersen, GTL, T & S, and W. Paul Wottring & Associates, Incorpo-

---

1. In both parties' briefs and the affidavit of Robert K. Lechtenberg, the parties spell Petersen's name "Petersen"; however, it is spelled "Peterson" in the petition and motion for new trial.

rated for negligence and negligence per se.

RKL filed a no-evidence motion for summary judgment, pursuant to Rule of Civil Procedure 166a(i), and, alternatively, a traditional motion for summary judgment, pursuant to Rule of Civil Procedure 166a(c). *See* Tex.R. Civ. P. 166a(c), (i). On August 31, 2004, the trial court granted interlocutory summary judgment in favor of RKL. On October 1, 2004, the trial court signed an order severing Mathis's suit against RKL from the underlying litigation, thereby making the interlocutory summary judgment order final.

### Summary Judgment Evidence

■ On appeal, RKL argues that Mathis cites to evidence that was not presented in response to RKL's motion for summary judgment and was, therefore, untimely and not part of the summary judgment evidence. In his brief on appeal, Mathis included as Appendix A additional excerpts of Petersen's deposition that were not on file with the clerk in his response to RKL's motion for summary judgment.[2]

Rule 166a(d) provides that discovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments are filed and served on all parties, *together with a statement of intent* to use the specified discovery as summary judgment proofs, at least seven days before the hearing if such proofs are to be used to oppose the summary judgment motion. Tex.R. Civ. P. 166a(d). In his response to RKL's motion for summary judgment, Mathis listed his summary judgment evidence as "Exhibit 1: Affidavit of George Mathis, Jr. Exhibit 2: Affidavit of Don M. Kerr, Jr. Exhibit 3: Deposition testimony of James E. Petersen, Jr." Mathis attached pages 29 through 32 and pages 37 through 40 of Petersen's deposition as Exhibit 3. Mathis thus provided RKL with a statement of intent in his response to RKL's motion for summary judgment to use pages 29 through 32 and pages 37 through 40 of Petersen's deposition (Exhibit 3), not a statement of intent to use the entire deposition or the additional excerpts that he presents on appeal as summary judgment proofs.[3]

■ The record reflects that Mathis cited to these additional excerpts from Petersen's deposition in his motion for new trial. In its response to Mathis's motion for new trial, RKL objected to the inclusion of the new summary judgment evidence pursuant to rule 166a(c). *See* Tex.R. Civ. P. 166a(c). A trial court may accept summary judgment evidence filed late, even after summary judgment, as long as

---

**2.** Mathis filed a motion to supplement the appellate record with (1) RKL's motion for summary judgment, (2) Mathis's response to RKL's motion for summary judgment, and (3) the entire volume of Petersen's deposition. We denied Mathis's request.

RKL's motion for summary judgment and Mathis's response were included in the appellate record as exhibits to Mathis's motion for new trial. Because RKL has not objected to their inclusion as attachments and has proceeded to reply to Mathis's points of error on the merits, any complaint that RKL may have had was waived, and we need not supplement the appellate record with RKL's motion for summary judgment and Mathis's response to RKL's motion for summary judgment. *See Atchison v. Weingarten Realty Mgmt. Co.*, 916 S.W.2d 74, 77 (Tex.App.-Houston [1st Dist.] 1996, no writ). We address below whether consideration of the entire volume of Petersen's deposition as summary judgment evidence is appropriate.

**3.** The additional excerpts included pages 1 through 4, pages 33 through 36, pages 45 through 48, and pages 57 through 60.

the court affirmatively indicates in the record that it accepted or considered the evidence. *Stephens v. Dolcefino,* 126 S.W.3d 120, 133–34 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). If a party files late summary judgment evidence, and no order appears in the record granting leave to file, the evidence will not be considered as being before the court. *Benchmark Bank v. Crowder,* 919 S.W.2d 657, 663 (Tex. 1996). Here, there is no indication in the record that the trial court granted leave to Mathis to file his late summary judgment evidence.[4]

Accordingly, we will not consider as grounds for reversal any summary judgment evidence not expressly presented to the trial court by written motion, answer, or other response. *See* Tex.R. Civ. P. 166a(c).

## Premises Liability

In his sole point of error, Mathis argues that "[t]he Trial Court erred as a matter of law by granting summary judgment dismissing [RKL] from the action." In its no-evidence motion for summary judgment and traditional motion for summary judgment, RKL alleged that there was no evidence of duty or proximate cause, and, alternatively, that Mathis could not meet his burden of proving RKL's negligence or negligence per se. On appeal, Mathis contends, in part, that (1) there is more than a scintilla of evidence to demonstrate that RKL had a duty to inspect and to warn him of the hole because it exercised control of the Petersen property and, furthermore, that (2) under the doctrine of res ipsa loquitur, there was an inference of liability against RKL.

## A. Summary Judgment Standard of Review

The propriety of summary judgment is a question of law, and we thus review the trial court's ruling de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). In reviewing a summary judgment, evidence favorable to the non-movant is taken as true, and all reasonable inferences are indulged in the non-movant's favor. *Johnson County Sheriff's Posse v. Endsley,* 926 S.W.2d 284, 285 (Tex.1996). When as here, the trial court does not specify the grounds upon which it ruled, the summary judgment may be affirmed on any of the movant's theories that has merit. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996). Appellate courts should consider all grounds for summary judgment that the movant presented to the trial court when properly preserved for appeal. *Id.*

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Park Place Hosp. v. Estate of Milo,* 909 S.W.2d 508, 510 (Tex.1995); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). A defendant moving for traditional summary judgment must either disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of its affirmative defense, thereby rebutting the plaintiff's causes of action. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex. 1995).

A no-evidence motion for summary judgment is essentially a directed verdict granted before trial, to which we

---

4. Even if Mathis had sought and had obtained leave of court, Mathis did not attached the deposition testimony including the additional excerpts to his motion for new trial.

apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex.2003). In general, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the non-movant's claims on which the non-movant would have the burden of proof at trial. *Flameout Design & Fabrication Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the non-movant to raise a fact issue on the challenged elements. Tex.R. Civ. P. 166a(i). A no-evidence summary judgment will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch Inc.,* 118 S.W.3d at 751.

**B. Negligence**

A cause of action for negligence consists of three essential elements: (1) a legal duty owed by one party to another; (2) a breach of that duty; and (3) damages proximately caused by that breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). Duty is the threshold inquiry in a negligence case. *Id.* The existence of a duty is a question of law for the court to decide based on the specific facts of the case. *Id.* To withstand RKL's no-evidence summary judgment, Mathis had to establish that some duty was owed to him by RKL. *See Centeq Realty v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995).

An owner or occupier of land has a duty to use reasonable care to keep the premises under his control in a safe condition. *Smith v. Henger,* 226 S.W.2d 425, 431 (Tex.1950). A general contractor on a construction site, who is *in control* of the premises, is charged with the same duty as is an owner or occupier. *Id.* at 431. The duty to keep the premises in a safe condition may subject the owner, occupier, or general contractor to liability in two situations: (1) those arising from a defect in the premises and (2) those arising from an activity or instrumentality. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 417 (Tex.1985).

Under certain circumstances, however, even one not in control of the property at the time of the injury may owe a duty to make the premises safe. *Lefmark Mgmt. Co. v. Old,* 946 S.W.2d 52, 54 (Tex.1997). One who agrees to make safe a known, dangerous condition of real property owes a duty of due care. *City of Denton v. Page,* 701 S.W.2d 831, 835 (Tex. 1986). A person who creates a dangerous condition owes the same duty. *Id.* (citing *Strakos v. Gehring,* 360 S.W.2d 787 (Tex. 1962)).

Mathis contends that RKL exercised control of the Petersen property because RKL requested bids and gave keys to the general contractors on Petersen's behalf. Mathis relies on *Smith v. Henger* to show that RKL had control of the Petersen property. *See Smith,* 226 S.W.2d at 431.

In *Smith,* the Texas Supreme Court held that, under the terms of the contract and the evidence showing actual control, the coordinator had a legal duty to use reasonable care to furnish a safe place to work for the employees of other contractors. *Id.* at 430. The court looked at the coordinator's conduct and provisions of the contract to determine that the coordinator had assumed the usual duties and responsibilities of a general contractor. *Id.* at

430–31. The evidence in *Smith* showed that the written contract between the property owner and the coordinator expressly provided that the coordinator would "have exclusive control of the supervision and coordination of the construction of said building. . . ." *Id.* The coordinator also testified that it was his duty to see that everything was safe and that the premises to which his control extended included the place where the subcontractor's employee was hurt. *Id.*

In contrast, in this case, there was no evidence that, by RKL's conduct or under provisions in its contract with Petersen, RKL had assumed the usual duties and responsibilities of a general contractor. *See id.* at 430–31. Mathis submitted the following summary judgment evidence: Mathis's affidavit, expert Don M. Kerr's affidavit, and Petersen's deposition testimony. Neither Mathis's nor Kerr's affidavit mentioned RKL. On appeal, Mathis relies on Petersen's deposition testimony to demonstrate that RKL had control of the Petersen property. Petersen stated that, *during* the stabilization phase, Restoration and "the architect" would have been in charge of safety at the Petersen property.[5] However, Petersen acknowledged that, *after* the stabilization phase,[6] he hired a new architect, namely RKL.[7] Petersen's testimony stating that the architect would have been responsible for safety during the stabilization phase is not evidence of who was responsible for safety when Mathis fell, which was after the stabilization phase.

The evidence does not show that RKL had actual control, but, rather, that RKL

was not an owner and did not occupy the Petersen property where Mathis was injured. Petersen owned the property and hired RKL to prepare a set of architectural plans and to obtain construction bids from general contractors. RKL conclusively proved that it did not create or cover the hole into which Mathis fell. In his affidavit, Mathis acknowledges that he was invited and accompanied onto the property by T & S, not by RKL, and that "[t]he unmarked, concealed hole into which [Mathis] fell was left behind by [Restoration] after it departed [the Petersen property]." RKL's involvement was limited to requesting bids from GTL, Braselton, and T & S and providing keys to them, with Petersen's permission, so that they could complete their bids. Mathis provided no evidence that RKL had owned, occupied, or created the dangerous condition or agreed to make it safe, and Mathis provided less than a scintilla of evidence that RKL actually controlled the Petersen property on the date of his accident. *See King Ranch,* 118 S.W.3d at 751. Therefore, Mathis failed to carry his summary judgment burden of establishing that RKL owed a duty to him to control the premises. *See Lefmark Mgmt. Co.,* 946 S.W.2d at 54; *Page,* 701 S.W.2d at 835; *Smith,* 226 S.W.2d at 431.

Because the summary judgment order did not specify the ground or grounds on which the trial court relied for its ruling, we will affirm the summary judgment if any theory that the movant advanced has merit. *See Cincinnati Life Ins. Co.,* 927 S.W.2d at 625; *Weiner v. Wasson,* 900

**5.** Petersen did not mention by name who the architect was during the stabilization phase.

**6.** Petersen testified that there was a two- to three-year time period after the stabilization phase when work on the Petersen property ceased.

**7.** To support its Motion for Summary Judgment under Rule 166a(c), RKL attached summary judgment evidence which included a draft of a proposed contract with Petersen. The owner of RKL stated in a sworn affidavit that his written contract with Petersen was not finalized. The draft of the proposed contract was dated May 17, 2001.

S.W.2d 316, 317 n. 2 (Tex.1995). Accordingly, we hold that the trial court did not err if it rendered summary judgment on Mathis's negligence claim on the basis of lack of a duty. *See King Ranch,* 118 S.W.3d at 751.

### C. Res Ipsa Loquitur

 Mathis claims that the trial court erred in granting summary judgment because RKL did not prove that it was not negligent.[8] Mathis argues that one of the defendants in the underlying case—RKL, Restoration, Petersen, GTL, T & S, or W. Paul Wottring & Associates, Inc.—must have been negligent because there is no other explanation for the "dangerous hole" on the Petersen property. Mathis,. therefore, contends that he can rely on the doctrine of res ipsa loquitur to establish the negligence of RKL. We disagree.

Res ipsa loquitur is Latin for "the thing speaks for itself." *Marathon Oil Co. v. Sterner,* 632 S.W.2d 571, 573 (Tex.1982). To establish a claim by res ipsa loquitur, a plaintiff must prove (1) an accident of this character does not ordinarily occur in the absence of negligence and (2) the instrument that caused the accident was under the exclusive management and control of the defendant. *Id.; Rogers v. Duke,* 766 S.W.2d 547, 548 (Tex.App.-Houston [1st Dist.] 1989, no writ).

The first factor is satisfied in this case, the second is not. The doctrine of res ipsa loquitur is not available to fix responsibility when any one of multiple defendants, wholly independent of each other, might have been responsible for the injury. *See Esco Oil & Gas, Inc. v. Sooner Pipe & Supply Corp.,* 962 S.W.2d 193, 195 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). In contrast, the doctrine can be used to fix responsibility against multiple defendants when they had joint control of the instrumentality causing the injury. *See Bond v. Otis Elevator Co.,* 388 S.W.2d 681, 685 (Tex.1965) (holding that res ipsa was applicable against landlord and elevator company that had joint control of elevator). RKL did not have joint control with the other defendants over the "dangerous hole."

Therefore, the trial court did not err in rending summary judgment for this reason as well.

We overrule Mathis's sole point of error.

### Conclusion

We affirm the judgment of the trial court.

---

8. We reach this challenge as an alternate basis upon which judgment could have been rendered for RKL.