Opinion by: Patricia O. Alvarez, Justice
This is a negligence suit with a res ipsa loquitur instruction in the jury charge. After Appellant Discount Tire Company of Texas, Inc. rotated the tires on a pickup truck, a tire detached and struck Appellee Federico Vargas Cabanas's vehicle. Cabanas sued for his injuries. The jury found Discount Tire negligent, and it awarded damages to Cabanas. Because the doctrine of res ipsa loquitur does not apply and there was no evidence of breach, we reverse the portion of the trial court's judgment in favor of Cabanas and render judgment that Cabanas take nothing on his claims against Discount Tire. We affirm the remainder of the trial court's judgment.
BACKGROUND
Tommy Ebarb owned a pickup truck. He upgraded it with custom lift, wheels, and tires. He took his seven-year-old pickup truck, with approximately 171,850 miles *569 on it, to Discount Tire. Discount Tire rotated the tires on Ebarb's pickup truck about 1:00 pm on a Friday. Ebarb drove his truck a few miles on Friday, Saturday, and Sunday. Sunday evening, as he was driving on a highway, Ebarb's truck's left front wheel detached, struck Cabanas's vehicle, and injured Cabanas.
Cabanas complained of back pain and was taken to the hospital for evaluation. Following the accident, Cabanas underwent several surgeries and incurred some medical expenses.
Cabanas's wife, Xochitl Contreras, acting both individually and as next friend of their daughter Clara Vargas Contreras, and Cabanas sued Ebarb and Discount Tire for injuries allegedly caused by the defendants' negligence.
After the plaintiffs rested, Ebarb and Discount Tire moved for directed verdicts. The trial court granted Ebarb's motion, but denied Discount Tire's motion. The trial proceeded, and the trial court held a charge conference. Discount Tire objected to the res ipsa loquitur instruction in the charge, but the trial court overruled the objection. The jury found Discount Tire negligent, and awarded Cabanas damages-primarily for past medical expenses.
Discount Tire raises three issues on appeal: (1) there is no evidence to support the jury's negligence finding, (2) the trial court erred by submitting a circumstantial evidence and a res ipsa loquitur instruction in the charge, and (3) the trial court erred by denying Discount Tire's request to put on evidence of the medical expenses Cabanas actually paid and incurred.
STANDARD OF REVIEW
For a legal sufficiency review, "the court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it." City of Keller v. Wilson , 168 S.W.3d 802, 822 (Tex. 2005). A legal sufficiency challenge must be sustained if there is a "complete absence of a vital fact" or "the evidence offered to prove a vital fact is no more than a scintilla."[1] Whirlpool Corp. v. Camacho , 298 S.W.3d 631, 639 (Tex. 2009) (citing City of Keller , 168 S.W.3d at 827 ). "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." Jelinek v. Casas , 328 S.W.3d 526, 532 (Tex. 2010) (quoting Kindred v. Con/Chem, Inc. , 650 S.W.2d 61, 63 (Tex. 1983) ).
"[S]ome suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence." Marathon Corp. v. Pitzner , 106 S.W.3d 724, 728 (Tex. 2003) (quoting Johnson v. Brewer & Pritchard, P.C. , 73 S.W.3d 193, 210 (Tex. 2002) ).
ORDER OF ISSUES
In its first issue, Discount Tire asserts the evidence is legally insufficient to support the jury's negligence finding. In its second issue, Discount Tire argues that res ipsa loquitur does not apply in this case. If res ipsa applies, it would serve as some evidence of Discount Tire's breach. See Mobil Chem. Co. v. Bell , 517 S.W.2d 245, 251 (Tex. 1974) ("[T]he effect of successfully invoking the res ipsa doctrine is that the plaintiff can survive no-evidence procedural *570 challenges-[the plaintiff] has produced some evidence of the defendant's negligence."). Because our legal sufficiency review of the evidence would be affected by the res ipsa loquitur doctrine, before we address Discount Tire's no-evidence challenge to the jury's negligence finding, we first consider whether res ipsa applies.
RES IPSA LOQUITUR
Over Discount Tire's objection, the trial court included a res ipsa loquitur instruction in the jury charge's negligence question.
A. Rule of Evidence
"In Texas ... res ipsa loquitur is simply a rule of evidence whereby negligence may be inferred" under certain circumstances. Mobil Chem. Co. v. Bell , 517 S.W.2d 245, 251 (Tex. 1974) (citing Owen v. Brown , 447 S.W.2d 883, 886 (Tex. 1969) ). "The purpose of res ipsa is to relieve the plaintiff of the burden of proving a specific act of negligence by the defendant when it is impossible for the plaintiff to determine the sequence of events, or when the defendant has superior knowledge or means of information to determine the cause of the accident." Jones v. Tarrant Util. Co. , 638 S.W.2d 862, 865 (Tex. 1982) ; Sanders v. Naes Cent., Inc. , 498 S.W.3d 256, 258 (Tex. App.-Houston [1st Dist.] 2016, no pet.).
B. Two Prerequisite Factors
"The [res ipsa ] doctrine is applicable only when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant." Marathon Oil Co. v. Sterner , 632 S.W.2d 571, 573 (Tex. 1982) (emphasis added); accord Owen , 447 S.W.2d at 886 ; see Gaulding v. Celotex Corp. , 772 S.W.2d 66, 68 (Tex. 1989) (requiring "the instrumentality which caused the injury ... to have been under the sole management and control of the defendant").
Both factors are required; without both, "the jury cannot reasonably infer from the circumstances of the accident that the defendant was negligent." Marathon Oil , 632 S.W.2d at 573 ; accord Mobil Chem. , 517 S.W.2d at 251.
1. First Factor-Type of Accident
"The first factor is necessary to support the inference of negligence ...." Mobil Chem. , 517 S.W.2d at 251 ; accord Jones , 638 S.W.2d at 865. The plaintiff must show that the accident that injured him "was the type of accident that normally would not occur without negligence." Jones , 638 S.W.2d at 865 ; see Mobil Chem. , 517 S.W.2d at 252 ("A finding of negligence necessarily includes [a] finding[ ] that the accident would not ordinarily occur in the absence of negligence ....").
2. Second Factor-Control
"[T]he second factor is necessary to support the inference that the defendant was the negligent party." Mobil Chem. , 517 S.W.2d at 251 ; accord Jones , 638 S.W.2d at 865. The purpose of the second factor is to ensure that it is appropriate to lay the alleged negligence at the defendant's door. Mobil Chem. , 517 S.W.2d at 251 ; see also Marathon Oil , 632 S.W.2d at 574. "The requirement of control is necessary to trace the negligence back to the defendant. It is sufficient that the defendant be in control of the instrumentality at the time that the negligence inferable from the accident probably occurred." Marathon Oil , 632 S.W.2d at 573 ; accord Mobil Chem. , 517 S.W.2d at 251. But a lapse in the defendant's control may make the doctrine inapt. See Gaulding , 772 S.W.2d at 68 (requiring that "the instrumentality *571 which caused the injury [be] shown to have been under the sole management and control of the defendant"); Trejo v. Laredo Nat. Bank , 185 S.W.3d 43, 47 (Tex.App.-San Antonio 2005) (same).
3. Second Factor-Multiple Defendants
"The doctrine of res ipsa loquitur is not available to fix responsibility when any one of multiple defendants, wholly independent of each other, might have been responsible for the injury." Mathis v. RKL Design/Build , 189 S.W.3d 839, 846 (Tex. App.-Houston [1st Dist.] 2006, no pet.) ; accord Parsons v. Ford Motor Co. , 85 S.W.3d 323, 332-33 (Tex. App.-Austin 2002, pet. denied) ; Esco Oil & Gas, Inc. v. Sooner Pipe & Supply Corp. , 962 S.W.2d 193, 195 (Tex. App.-Houston [1st Dist.] 1998, pet. denied) ; see also Weirich v. IESI Corp. , No. 03-14-00819-CV, 2016 WL 4628066, at *4 (Tex. App.-Austin Aug. 31, 2016, no pet.) (mem. op.) (quoting Mathis , 189 S.W.3d at 846 ).
Res ipsa may apply where two (or more) defendants have joint control over the instrumentality that causes the injury. See Bond v. Otis Elevator Co. , 388 S.W.2d 681, 685 (Tex. 1965) ; Sanders v. Naes Cent., Inc. , 498 S.W.3d 256, 259 (Tex. App.-Houston [1st Dist.] 2016, no pet.) (contrasting Bond , which applied res ipsa to multiple defendants, with Marathon Oil , which did not).
But where the defendant did not have exclusive control over the instrumentality that caused the injury, and others had access to and could have tampered with the instrumentality, the doctrine of res ipsa loquitur is not applicable. See Sanders , 498 S.W.3d at 259 ("The doctrine of res ipsa loquitur is not available to fix responsibility when any one of multiple defendants, wholly independent of each other, might have been responsible for the injury."); Trejo , 185 S.W.3d at 48 ("The doctrine of res [ispa ] loquitur applies only where the instrumentalities causing the injury are shown to have been wholly in the care of the defendant and not to have been meddled with by the person injured or third parties."); Lucas v. Titus County Hosp. Dist./Titus Mem'l Hosp. , 964 S.W.2d 144, 156 (Tex. App.-Texarkana 1998, no pet.) (rejecting the application of the res ipsa doctrine "because the chair was in a public waiting area, [and] it [was] possible that someone other than the Hospital broke the recliner before [the plaintiff was injured]"); Graham v. Fed-X, Inc. , 384 S.W.2d 785, 787 (Tex. Civ. App.-Fort Worth 1964, writ ref'd n.r.e.) (concluding res ipsa did not apply to the plaintiff's negligence claim for her injuries suffered from broken glass when a carton of soft drinks fell off a shelf in a grocery store because "[w]ith so many people having equal access to the bottle racks it can hardly be said the bottles were in the sole and exclusive control of [the grocery store]").
C. Applicability to Discount Tire
At Cabanas's request, the negligence question included a res ipsa loquitur instruction. To be entitled to the instruction, Cabanas had the burden to establish both factors: the type of accident and control. See Marathon Oil , 632 S.W.2d at 573 ; Sanders , 498 S.W.3d at 258 (citing Jones , 638 S.W.2d at 865 ). Discount Tire argues Cabanas did not produce evidence of either factor. For convenience, we address the second factor first.
The following evidence is uncontroverted. Discount Tire had exclusive control of the wheel while it rotated the tires on Friday about 1:00 pm, and then Ebarb regained control. He drove his truck some on Friday evening, Saturday, and Sunday; and he was driving it Sunday evening at *572 the time of the accident. During the times Ebarb was at home that weekend, he parked his truck in his apartment's parking lot-which was accessible to the public.
Discount Tire did not have exclusive control over the wheel after it rotated the tires. Cf. Weirich , 2016 WL 4628066, at *4 ; Trejo , 185 S.W.3d at 47. After it was done, Discount Tire relinquished control to Ebarb, and Discount Tire had no ongoing control over the truck or any responsibility to maintain it. See Weirich , 2016 WL 4628066, at *5 (noting that garbage truck company had control over its own truck but relinquished control to the towing company when it was towed, and res ipsa loquitur was not available to the plaintiff because either defendant could have been separately negligent).
Further, while Ebarb had control over the truck, it was accessible to the public, and an unknown actor could have tampered with the wheel. See Trejo , 185 S.W.3d at 48 (bank outdoor teller canister); Lucas , 964 S.W.2d at 156 (chair in public waiting area); Graham , 384 S.W.2d at 787 (glass bottles on grocery store shelf).
Because Discount Tire or Ebarb could have been separately negligent, or an unknown actor could have tampered with the truck after Discount Tire rotated the tires, we conclude Cabanas failed to establish the second factor necessary to invoke res ipsa . See Weirich , 2016 WL 4628066, at *5 ; Sanders , 498 S.W.3d at 260-61. Given both factors are required, and Cabanas failed to establish the second, we need not consider the first. See Marathon Oil , 632 S.W.2d at 573 ; Mobil Chem. , 517 S.W.2d at 251. Accordingly, we conclude that the doctrine of res ipsa loquitur does not apply. See Weirich , 2016 WL 4628066, at *5 ; Sanders , 498 S.W.3d at 260-61 ; Mathis , 189 S.W.3d at 846 ; Trejo , 185 S.W.3d at 48.
NEGLIGENCE CLAIM
Because res ipsa does not apply, the doctrine does not supply some evidence of Discount Tire's breach. See Mobil Chem. , 517 S.W.2d at 251 (noting that "successfully invoking the res ipsa doctrine [effectively] produce[s] some evidence of the defendant's negligence"). But that does not end our analysis. We must consider whether, without res ipsa 's assistance, there is nevertheless some evidence to support the jury's negligence finding.
A. Elements of Negligence Claim
"To sustain a negligence action, the plaintiff must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach." Lee Lewis Const., Inc. v. Harrison , 70 S.W.3d 778, 782 (Tex. 2001). Discount Tire agreed it had a responsibility to properly service Ebarb's truck's tires; it did not challenge the element of duty. The disputed elements are breach and proximate cause. We first address the evidence pertaining to breach.
B. Evidence at Trial
1. Garrett Puckorius-Service Technician
Discount Tire called Garrett Puckorius; he was the service technician who was responsible to tighten and torque the lug nuts on Ebarb's truck. Puckorius testified to the following facts.
He started working for Discount Tire in June 2011. He works on as many as 100 vehicles per day, and he had no specific recollections of working on Ebarb's truck.
He testified repeatedly that he always follows the proper procedures to remove, inspect, and reinstall the tires. For a four-wheeled vehicle, he installs the tires on the passenger side of the vehicle, and the first *573 service technician installs the tires on the driver's side. After the first service technician installs the driver's side tires, Puckorius follows up and tightens the driver's side left tires' lug nuts twice more. He never deviates from the procedure; he uses the same procedure for every vehicle every time. He has never been reprimanded or cited for not doing his job correctly.
He knows he tightened and torqued the lug nuts on Ebarb's truck because the service invoice for Ebarb's truck has his initials on it, and he would not have initialed the invoice unless he performed the proper procedures for rotating the tires-including properly tightening and torqueing the lug nuts.
The Passport book (the procedures book) calls for two service technicians, one crew chief, and one service coordinator to rotate tires, but the team that day only had three people: two technicians and a service coordinator. The Passport book identifies a four-man crew. It does not require a four-man crew, but it does not expressly authorize a three-man crew. For Ebarb's truck they used a three-man crew. Puckorius acknowledged that if a crew did not follow the procedures, and a wheel's lug nuts were not properly tightened, a wheel could come off, but he does not know why Ebarb's truck's wheel came off.
2. Jesse Kubica-Assistant Vice President
Cabanas called Jesse Kubica, who testified to the following facts. He began his 30-year career at Discount Tire as a service technician, and he worked his way up to Assistant Vice President for the San Antonio Region of Discount Tire of Texas, Inc.
The Passport book identifies the roles required to perform tire rotations: two service technicians, one crew chief, and one service coordinator, but these are roles not individuals. One individual can, and regularly does, perform more than one role. Further, a crew chief may work on two vehicles at the same time; when he does, his time is divided between the two vehicles.
When Ebarb's truck's tires were rotated, Josh Pate was serving as both the crew chief and the service coordinator. The crew chief does not physically remove or install tires-only the service technicians do that. Discount Tire's procedures do not require a separate person to verify that the second service technician retightened and torqued the lug nuts that the first service technician tightened. When Pate initialed the service invoice, his initials indicated he properly supervised the job and the lug nuts on Ebarb's truck were tightened and torqued properly.
With respect to vehicle defects, Kubica testified that Discount Tire's service technicians are competent to do visual inspections of tires, wheels, hub assembly studs, and lug nuts. There were no defects noted on Ebarb's service invoice. Kubica acknowledged that if there were no other defects in a wheel assembly, and if the lug nuts were properly tightened, a wheel would not normally come off, but he did not know why Ebarb's truck's wheel came off.
3. Tommy Ebarb-Truck Owner
Tommy Ebarb, who now lives out of state, testified by a video recorded deposition.
He upgraded his seven-year-old pickup truck with aftermarket lift, wheels, and tires. He had his truck's tires rotated by Discount Tire. After they rotated his tires, they did not tell him there was anything wrong with his wheels or tires. He looked over his truck right after Discount Tire finished rotating his tires, and he didn't see anything wrong, but he didn't check *574 the torque on the lug nuts. He didn't have anyone else work on his truck after Discount Tire rotated his tires, and he didn't work on his truck either.
From Friday afternoon to Sunday evening, he drove around San Marcos, but not very much. When he drove his truck, he did not notice anything wrong; it was running fine. There was no wobble or other indication of trouble until the moment his wheel detached. After the accident, he noticed there were no lug nuts on the wheel studs. When he later saw the photograph of the studs on the wheel hub, he opined that the studs "don't look good."
He acknowledged that if Discount Tire had not properly tightened the lug nuts, that could have caused his wheel to come off, and he reported that to the officer who investigated the accident. He did not know of anyone trying to take or steal anything from his truck. But he suggested that another reasonable cause for the wheel to come off was that someone tried to steal the tire and they took the lug nuts off.
4. Trooper Eder Valera
Trooper Eder Valera was the responding officer at the scene of the accident. He testified by video deposition to the following facts.
As a trooper, he was not trained in accident reconstruction, but was trained in "basic crash investigation." His investigation included interviewing the drivers, trying to figure out what happened, and what caused the accident. He considers weather conditions, road conditions, and vehicle speeds; and he asks the drivers if there are any defects to the vehicles.
He investigated the accident involving Ebarb's and Cabanas's vehicles. He found the left front wheel came off Ebarb's truck and struck Cabanas's truck. Ebarb told him he (Ebarb) had just gotten new tires on his truck. Valera opined that if a wheel had improperly tightened lug nuts, the lug nuts could vibrate and come loose. He did not find the wheel or the lug nuts, and he did not inspect the left wheel hub assembly on Ebarb's truck. He noted that if there was a need for accident reconstruction, such as for a fatal accident, an accident reconstruction team is called. But he did not try to determine why the wheel detached, and he had no idea why it came off.
C. Evidence of Breach
Discount Tire acknowledged it had a duty of care in servicing Ebarb's truck, and Cabanas argued the jury could find from the evidence that Discount Tire was negligent and its negligence proximately caused the accident.
1. Cabanas's Arguments
At trial, Cabanas argued that there were only two ways the wheel could have come off: a defect or improperly tightened lug nuts. Because Discount Tire had inspected the wheel and found no defects, the only remaining possibility was that Discount Tire did not tighten the lug nuts properly. Cabanas contended the jury could infer from the evidence and the accident that Discount Tire failed to tighten and torque the lug nuts properly, it breached its duty, and its breach was the proximate cause of Cabanas's injuries.
2. No Direct Evidence of Breach
The only direct evidence of whether Discount Tire properly tightened and torqued the tires was Puckorius's testimony and the service invoice. Puckorius testified he always followed the same proper procedure, and his signature on the service invoice indicated he properly tightened and torqued the lug nuts on Ebarb's truck.
Viewing the evidence in the light most favorable to the jury's finding, we nevertheless conclude it is no evidence of Discount Tire's alleged breach. Cf.
*575 Freedom Newspapers of Tex. v. Cantu , 168 S.W.3d 847, 853 (Tex. 2005) (observing that "the possibility that a jury might disbelieve [evidence] is not evidence supporting the contrary").
3. Circumstantial Evidence of Breach
Cabanas also argued that the circumstantial evidence-a three-man crew instead of a four-man crew and the accident itself-was evidence that Discount Tire failed to tighten and torque the lug nuts properly. But Cabanas produced no evidence that the service coordinator (Pate) was not actually watching Puckorius work. Cabanas asserted that Pate's time was divided, but Cabanas produced no evidence that Pate did not properly supervise Puckorius's work or that Puckorius did not properly tighten and torque the lug nuts. And, an accident alone is no evidence of a breach. See Trejo , 185 S.W.3d at 48 ("[T]he occurrence of an accident is not of itself evidence of negligence."); cf. Beier v. Int'l Harvester Co. , 287 Minn. 400, 178 N.W.2d 618, 620 (1970) (wheel detachment case).
In this case, the jury was left with meager circumstantial evidence that required them to guess whether Puckorius actually tightened and torqued the lug nuts properly. Contra City of Keller , 168 S.W.3d at 813 (noting that "meager circumstantial evidence" that requires jurors "to guess whether a vital fact exists" is legally insufficient).
Considering the three-man crew circumstantial evidence and the fact that the accident happened, the jury could suspect that Pate might have been too busy to watch Puckorius service the left front wheel and suspect that Puckorius failed to tighten and torque the lug nuts, but "some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence." Marathon Corp. v. Pitzner , 106 S.W.3d 724, 728 (Tex. 2003) (quoting Johnson v. Brewer & Pritchard, P.C. , 73 S.W.3d 193, 210 (Tex. 2002) ).
Having "consider[ed] the evidence in the light most favorable to the verdict, and indulg[ing] every reasonable inference that would support it," see City of Keller , 168 S.W.3d at 822, 827, we nevertheless conclude that the circumstantial evidence was nothing more than a scintilla, and it was legally insufficient to support a finding that Discount Tire breached its duty of care, see Jelinek , 328 S.W.3d at 532 (quoting Kindred , 650 S.W.2d at 63 ) ("When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.").
Because there was no evidence of breach, and breach is an essential element of negligence, we need not address proximate cause. See Midwest Emp'rs Cas. Co. ex rel. English v. Harpole , 293 S.W.3d 770, 776 (Tex. App.-San Antonio 2009, no pet.) (listing breach as an essential element of a negligence cause of action).
CONCLUSION
There was conclusive evidence that Discount Tire had exclusive control over the wheel when it rotated Ebarb's pickup truck's tires, but that control reverted to Ebarb when he took back his truck. During the fifty-five hours after Discount Tire rotated the tires and before the accident, Ebarb had control over his truck, drove it, and parked it in places accessible to the public. Because Discount Tire, Ebarb, or an unknown party could be responsible for the wheel detachment, res ipsa loquitur does not apply.
Because res ipsa does not apply, the doctrine did not supply some evidence of breach, and the jury's negligence finding was susceptible to Discount Tire's no-evidence challenge.
Discount Tire asserted there was no evidence of breach, and we agree. Assuming *576 without deciding that Discount Tire's Passport book established the standard of care,[2] Discount Tire's personnel testified that they followed their written procedures, and the service invoice supported their testimony; this evidence negated Discount Tire's breach. In response, Cabanas produced no controverting evidence or any other evidence of breach.
Given no evidence of breach, the evidence was not legally sufficient to support the jury's negligence finding, and the trial court erred by awarding damages. Because we will reverse the award of damages, we need not address Discount Tire's complaint about the trial court excluding evidence of Cabanas's medical bills.[3]
We reverse the portion of the trial court's judgment awarding Cabanas damages and render judgment that Cabanas take nothing on his claims against Discount Tire. We affirm the remainder of the trial court's judgment.

The scintilla rule applies when there is no direct evidence of the vital fact, but circumstantial evidence is offered to create an inference of a vital fact. See William Powers Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515, 521 (1991).

Although we may consider a company's internal policies when determining the standard of care, "a company's internal policies 'alone do not determine the governing standard of care.' " FFE Transp. Servs., Inc. v. Fulgham , 154 S.W.3d 84, 92 (Tex. 2004) (quoting Fence v. Hospice in the Pines , 4 S.W.3d 476, 481 (Tex. App.-Beaumont 1999, pet. denied) ).

See Tex. R. App. P. 47.1(a) (requiring courts to address issues "necessary to final disposition of the appeal").