

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00046-CV

_____

BRITTANY RUSSELL, APPELLANT

V.

ALLSTATE INSURANCE COMPANY, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 79,434-B; Honorable Titiana Frausto, Presiding

August 30, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Brittany Russell, appeals the trial court's rendition of summary judgment in favor of Appellee, Allstate Insurance Company, on her negligence claim arising out of the discovery of explicit photographs of her on a computer at the office of her former employer. Through one issue, Russell contends the trial court erred in granting Allstate's no-evidence and traditional motion for summary judgment. Russell contends the record

shows a fact issue exists on the challenged elements of her claim. We affirm the judgment of the trial court.

### BACKGROUND

Russell began working for Lee McCasland at McCasland's Allstate Insurance Agency in 2012. She remained there until she voluntarily resigned in July 2017 by providing a resignation letter to McCasland. She did not notify Allstate of her departure. The events leading to the case before us occurred after she left her employment with McCasland.

McCasland was an independent contractor for Allstate and sold Allstate insurance products through his agency. He acted as an Allstate Exclusive Agent and had an agreement, the Allstate R3001 Exclusive Agency Agreement, with Allstate.[1] This agreement permitted McCasland to participate in Allstate's Exclusive Agency Program and permitted him to accept applications for insurance in Texas. That agreement also specifically stated that McCasland was an independent contractor, not an employee of Allstate. McCasland hired his own employees who used equipment, including computers, that his agency owned and controlled. McCasland hired Russell in 2012 as an office manager and an authorized Allstate agent.[2] Russell was not a party to any agreement

---

[1] The R3001 Agreement specifically incorporated by reference the Exclusive Agency Independent Contractors Manual. Provisions in that manual made it clear that McCasland was "solely responsible for determining all aspects of [his] agency staff's relationship with [him]" and that Allstate "plays no role in those decisions."

[2] Russell was hired as a Licensed Sales Professional ("LSP"). LSPs were able to obtain binding authority that allowed them to sell insurance policies. To obtain that authority, LSPs were required to pass a background check and be approved by Allstate. Russell satisfied both requirements. She was also required to sign a non-compete and confidentiality agreement with Allstate. None of these documents indicated she was an employee of Allstate. Other mentions of confidentiality referred to information on the Allstate website and servers, not information found on an agent's computer hard drive.

between McCasland and Allstate. Russell did, however, sign several documents as an employee of McCasland. None of those documents indicated she was an employee of Allstate.[3]

While Russell was employed with McCasland, she often brought her personal cell phone to work and connected it to her agency computer to charge it. McCasland had told his employees he did not want them to plug their phones into their agency computers.[4] Rather, employees had the option of utilizing an electrical outlet through which they were able to charge their personal devices. Notwithstanding this restriction, Russell continued to connect her personal cell phone to her agency computer to charge it. At some point, several explicit photographs[5] of Russell were transferred from her personal cell phone to the hard drive of her agency computer.[6] According to Russell, she did not intend for anyone other than herself and her husband to see these photographs and she did not intentionally transfer those photographs to her agency computer.

Several months after she left McCasland's agency, McCasland was using the computer once used by Russell. He discovered the explicit photographs of Russell while he was looking for a file. Another employee was in the room when McCasland found the

---

[3] Another of McCasland's employees testified it was her understanding that all persons with whom she worked at McCasland's agency were McCasland's employees and not employees of Allstate.

[4] He did acknowledge, however, that he "probably tolerated it . . . ."

[5] According to descriptions in the record, some of the photographs depicted Russell in various states of semi-nudity and nudity, taken in locations other than the office. Other photographs depicted Russell at work, wearing sleeveless tops with low-cut necklines.

[6] McCasland testified in his deposition that he did not utilize any programs that secretly or automatically mined or downloaded data from personal cell phones when plugged into agency computers. Russell's expert testified he "did not see anything installed that would automatically extract data from a phone." Another employee also testified that to her knowledge, no such software was utilized at the agency.

3

photographs and saw the first photo. McCasland asked his other employees whether they knew anything about the photographs on the computer. Those employees briefly saw one photograph. No one made any negative comments about Russell at that time.[7] After speaking with others, including Tim Krieg, a Field Sales Leader for Allstate, McCasland deleted the photographs.[8] No other personal information from personal cell phones was discovered on any of the other agency computers.

Russell filed suit against McCasland and Allstate after what she characterized as McCasland's "publication of the [explicit] images to his entire office after their discovery." In that suit, among other claims, Russell claimed Allstate was negligent because its actions fell below industry standards and deviated from company policies.

On consideration of Allstate's hybrid motion for summary judgment, the trial court granted the motion and entered an order dismissing Russell's claim with prejudice. The order did not specify whether the trial court was granting the traditional motion, the no-evidence motion, or both, nor did it specify the grounds on which the trial court was granting the relief requested. This appeal followed.

### GENERAL PRINCIPLES OF SUMMARY JUDGMENT REVIEW

We review a trial court's ruling on a summary judgment motion under a *de novo* standard of review. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In

---

[7] McCasland testified in his deposition that he instructed his employees not to discuss the photographs and informed them he would fire them if they did. He also took the computer on which the photographs were found out of use.

[8] McCasland viewed Krieg as a supervising employee of Allstate.

4

conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Valence Operating*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. "When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 281, n.3 (Tex. 2017) (quoting *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex. 1989)).

A party seeking summary judgment can move for both a traditional and no-evidence summary judgment in the same or separate motions. *See* TEX. R. CIV. P. 166a(c), (i). *Binur v. Jacobo*, 135 S.W.3d 646, 650 (Tex. 2004). Further, when a party has filed both a traditional and no-evidence motion for summary judgment we typically review the no-evidence summary judgment first. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). This is so because, if the non-movant fails to produce more than a scintilla of evidence on the challenged essential element or elements, then there is no need to analyze the movant's traditional grounds for summary judgment because no greater relief could be granted. *Ridgway*, 135 S.W.3d at 600.

STANDARD OF REVIEW—NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

After an adequate time for discovery, a party may move for summary judgment on the basis that there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008); *LMB, Ltd. v. Moreno*, 201 S.W.3d

5

686, 688 (Tex. 2006). A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict. Accordingly, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we would apply in reviewing a directed verdict. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003) (citations omitted). As such, we review the summary judgment evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.* at 751 (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

A no-evidence motion for summary judgment must state the essential element or elements as to which the movant claims there is no evidence. TEX. R. CIV. P. 166a(i). Once the movant's burden is met, the burden shifts to the non-movant to produce summary judgment evidence raising an issue of material fact as to the challenged element or elements of its cause of action. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). Therefore, when a proper no-evidence motion for summary judgment has been filed, the trial court must grant the motion unless the record contains more than a scintilla of competent summary judgment evidence raising a genuine issue of material fact on the challenged elements. *See Hamilton*, 249 S.W.3d at 426. However, the non-moving party is not required to marshal all of its proof, and its response need only point out evidence that raises a fact issue on the challenged essential elements. TEX. R. CIV. P. 166a(i), Notes and Comments (1997); *Hamilton*, 249 S.W.3d at 426.

We review a no-evidence summary judgment for competent summary judgment evidence or undisputed facts that would enable reasonable and fair-minded jurors to differ in their conclusions. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

6

Given those standards, a no-evidence motion for summary judgment will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *King Ranch*, *Inc.*, 118 S.W.3d at 751.

A fact issue exists if there is more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.*; *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc.*, 118 S.W.3d at 751 (quoting *Merrell Dow Pharms.*, 953 S.W.2d at 711). Conversely, less than a scintilla of evidence exists when the evidence is "so weak as to do no more that create a surmise or suspicion" of fact. *Id.* (quoting *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

### STANDARD OF REVIEW—TRADITIONAL MOTION FOR SUMMARY JUDGMENT

To prevail on a traditional motion for summary judgment the movant must "show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law . . . ." TEX. R. CIV. P. 166a(c); *Cmty. Health Sys. Pro'l Servs. Corp.*, 525 S.W.3d at 681 (citing *Provident Life*, 128 S.W.3d at 216); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017)). A fact is conclusively established if reasonable minds could not differ about the conclusion to be drawn from the record. *City of Keller*, 168 S.W.3d at 816.

7

Here, Russell's cause of action is based on a claim of negligence. Her claim is "predicated on the fact that but for the images being downloaded to [the computer] without her knowledge there would be no disclosure of the images in November of 2017." Therefore, in order to prevail on her claim, Russell was required to prove three essential elements: (1) a legal duty owed by Allstate, (2) Allstate's breach of that duty, and (3) damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002) (citations omitted).

**EXISTENCE OF A DUTY**

The threshold inquiry in any negligence cause of action is one of duty. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Mathis v. RKL Design/Build*, 189 S.W.3d 839, 844 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The "existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (citation omitted). In determining whether a defendant owes a duty to a plaintiff, the trial court may consider several factors. *Id.* Those factors include "the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Id.* (citation omitted). Foreseeability is "the foremost and dominant consideration." *Id.* (citation omitted). "The nonexistence of a duty ends the inquiry into whether negligence liability may be imposed." *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998). Generally, no duty exists to take action to prevent harm to

8

others absent certain special relationships or circumstances. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000).

Russell contends that a legal duty may be imposed in situations in which one has the right to control another. Here, Russell argues, citing *Centeq Realty, Inc.*, 899 S.W.2d at 199, Allstate had the right to control McCasland and through that right, it owed a duty to her as McCasland's employee. She asserts that in Texas, "duty follows control and in instances where a party has the right of control or exclusive control over a set of facts the duty is assumed by the party with the control." She also notes, citing *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993), that "specific control over the issue of facts surrounding the incident subject of the suit is required in order to establish the existence of a duty for the event." She argues, citing *Redinger v. Living Inc.*, 689 S.W.2d 415, 418 (Tex. 1985), that even in contexts in which independent contractors are involved, the party who retains the right of control or exercises actual control over the work of an independent contractor also owes a duty of reasonable care to the contractors and his employees over the matters they control.

Russell argues Allstate owed her a duty because it exerted specific control over the specifications of the computers its agencies were permitted to purchase, including where to purchase those computers, the software placed on them, the security features utilized, the security protocols followed, and the enforcement policies and guidelines for handling private data on the agents' computers. Russell argues that the agreement between McCasland and Allstate set forth specific policies and procedures for computer security and the handling of data to protect the privacy of sensitive information and the data of customers and agents. She asserts that Allstate exercised control over the

9

computers used by McCasland's employees because it installed and enabled security programs on those computers, including an encryption program configured by Allstate with a "digital signature" of Allstate verifying the rights of the company to the software. The software included avenues through which Allstate was able to monitor the computer remotely and control the "end point security" on the system. As support for her position that Allstate exerted the control necessary for a finding of a duty owed to her, Russell points to the testimony of her expert in which he concluded that Allstate's computer security software permitted Allstate to control how and what outside data could be uploaded to the computer as well as the ability to monitor and inspect the systems to prevent inadvertent uploading of data and/or to delete data found on the computer that should not have been present.

Allstate disagrees with Russell's arguments. It contends she is relying on caselaw that does not support her position because it involves contexts dissimilar to the one at issue. Further, Allstate asserts Russell is asking the court to create a new duty rather than identifying the special relationship or circumstance that would be required to find a duty owed by Allstate to her. Allstate contends that no Texas court has imposed the duty Russell suggests outside of premises liability and workplace safety cases on which she relies. Russell has not pointed this court to any such cases. Moreover, Allstate argues Russell has ignored the applicable legal analysis courts use to determine the existence of a duty: the risk-utility test. *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 736 (Tex. 1998); *Whitney Crowne Corp. v. George Distributors, Inc.*, 950 S.W.2d 82, 88–89 (Tex. App.—Amarillo 1997, writ denied) (outlining risk-utility test and finding no duty). The most important factor in that test is foreseeability. *Tex. Home Mgmt. v. Peavy*, 89 S.W.3d 30,

10

36 (Tex. 2002). Even so, foreseeability is not enough on its own to create a duty. *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 290–91 (Tex. 1996).

We agree with Allstate's position. Here, Allstate could not have reasonably foreseen that explicit photographs of an employee would be transferred to McCasland's agency computer. Allstate did not own or control that computer and McCasland was solely responsible for managing his employees, including Russell. Russell herself admitted the photographs were "not safe for work" and thus, Allstate could not have foreseen that she would have intentionally or inadvertently transferred them to her agency computer. Moreover, another employee testified in a deposition that when an employee plugged a personal cell phone into the agency computer, a prompt was generated asking the user to give or deny permission for the computer to access the device. Russell admitted her cell phone was password protected and her expert acknowledged the prompt on the phone allowing the computer to access the phone. An employee also testified there was no software that automatically uploaded personal information without knowledge of the user.

However, even assuming the applicability of the specific control test, the record does not support a finding that Allstate possessed the requisite right of control of what was installed on the agency computers and how that installation was made. *See Exxon Corp.*, 867 S.W.2d at 23. The record shows Allstate only ensured the computers purchased included the security specifications necessary to access the Allstate network which was accessible through a web-based portal. Krieg testified that Allstate provided money each year, placed on a Citibank debit card, for agents to buy computers from the Allstate vendor. That vendor "makes sure that [the computers are] configured correctly

11

and secure. They have a security chip called a T-chip." Krieg explained that all he knows about the T-chip is that it is supposed to make the computers more secure. Allstate information was accessed "by going through web sites." Agents and employees would access the site and enter an authentication code and a password. There was also a two-factor authentication that was "either a key fob or your phone." Other security specifications and protocols were left to the individual agent's sole discretion.

Further, the record is clear that McCasland had exclusive discretion to decide whether and how to restrict or limit his employees' ability to upload data from external sources to agency computers. Krieg testified in his deposition that when McCasland reported the photographs to him, he did nothing more than agree that deleting the photographs was a good idea. He did not report it to anyone at Allstate because it was "[McCasland's] computer. It's not Allstate's computer, and it had nothing to do with the information security of the company."[9] Moreover, according to Krieg, "[a]n agent's hard drive is the agent's property." While Russell argued that "Allstate should have incorporated a simple windows policy that disables USB Storage devices from accessing the computer system and hard drives of the computer[,]" we find no evidence in the record supporting the idea that to do so was an industry practice or that Allstate had any duty to do so.

---

[9] Krieg later elaborated, stating "That's [McCasland's] private computer. Our information is he accesses our information through the web sites through Citrix off of his computer. So we—we do have a concern that he—his computer meets the technology standards, speed and specifications, so we do have a concern about that. But information that he has on his hard drive is his own personal information; it's not ours." Krieg testified that information belonging to Allstate is on the website; "[i]t does not reside on the agent's hard drive."

12

Moreover, there is nothing in the record to indicate Allstate had any duty relating to McCasland's discovery of and alleged dissemination of the explicit photographs of Russell. Those actions are the actions that gave rise to Russell's suit and there is simply no evidence in the record of any duty Allstate owed to Russell to prevent such discovery and alleged dissemination. Accordingly, any finding of a duty owed based on the facts in the record would be nothing more than conjecture or surmise. Thus, because the summary judgment evidence offered to prove the existence of a duty owed by Allstate to Russell is less than a scintilla of probative evidence, the trial court did not err in granting Allstate's no-evidence motion for summary judgment.

### CAUSATION

Furthermore, the summary judgment evidence offered to support a finding of causation is likewise insufficient to rise to the level of a scintilla of probative evidence. The two elements of causation are (1) cause-in-fact and (2) foreseeability. *Rodriguez v. Moerbe*, 963 S.W.2d 808, 818 (Tex. App.—San Antonio 1998, pet. denied). Cause-in-fact is not shown if the defendant's negligence did no more than furnish a condition that made the injury possible. *Id.* (citation omitted). "Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others, and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." *Id.* (citations omitted). Foreseeability does not require that the actor anticipate the precise manner in which injury will occur once it has created a dangerous situation through its negligence. *Id.* (citations omitted). If, however, foreseeability involves the resolution of disputed facts or inferences, legal resolution would be inappropriate.

*Id.* (citations omitted). Causation is "generally a question of fact for jury determination" but "may, under limited circumstances, be a question of law where the evidence is without material dispute and where only one reasonable inference may be drawn therefrom." *Flores v. Rector*, No. 07-19-00274-CV, 2020 Tex. App. LEXIS 6735, at *1 (Tex. App.— Amarillo Aug. 20, 2020, no pet.) (mem. op.) (citing *Rodriguez*, 963 S.W.2d at 818-19).

As noted, there is nothing in the record to indicate Allstate had any part in McCasland's discovery of and alleged dissemination of the explicit photographs of Russell. Those actions are the actions that gave rise to Russell's suit and the record is simply devoid of any evidence that Allstate engaged in any conduct that led to the discovery or alleged dissemination of those photographs. Russell does not adequately address either cause-in-fact or foreseeability.

Cause-in-fact is not established when a defendant's negligence does nothing more than furnish a condition which makes the alleged injury possible. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). The record here shows that the acts Russell attempts to attribute to Allstate, i.e., McCasland's discovery of and alleged dissemination of Russell's explicit personal photographs, is too attenuated to prove cause-in-fact. Even assuming Allstate committed some act of negligence relating to the security features placed on the computer Russell used while employed by McCasland, this act of negligence is insufficient to raise a genuine issue of fact as to causation under these facts. Allstate's initial possible act of negligence did no more than create the condition by which the acts of which Russell complains could occur. First of all, it was Russell who connected her cell phone to McCasland's computer which allowed it to upload the photographs in question. Secondly, it was McCasland who was looking for a

file on the computer Russell formerly used and it was McCasland who found the photographs and allegedly showed them to others in the office. Allstate had no part in uploading, discovery, or dissemination of the photographs and thus, there is no evidence of cause-in-fact.

The same is true regarding foreseeability. There is no evidence in the record supporting a contention that Allstate could have or should have anticipated that personal data like the explicit photographs of Russell would be transferred to an agency computer and later found by McCasland. There is certainly no evidence that Allstate could have or should have anticipated that any such information would have been disseminated to others. Therefore, the record contains no evidence that Allstate could have foreseen the events leading to the legal injury Russell claims.

Thus, because the summary judgment evidence offered to prove Allstate caused a legal injury to Russell is also less than a scintilla of probative evidence, lack of proof of causation is an alternative reason the trial court did not err in granting Allstate's motion for summary judgment.

### CONCLUSION

We overrule Russell's issue and affirm the judgment of the trial court.


Patrick A. Pirtle
Justice


15