**AFFIRMED and Opinion Filed August 30, 2024**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-22-00805-CV**

_____

**SHAMELL ROBERSON AND JOEL ROBERSON, Appellants**

**V.**

**SUNOCO PARTNERS LEASE ACQUISITION & MARKETING, LLC, AND ROBERT LEE JOHNSON, Appellees**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-18746**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Breedlove
Opinion by Justice Reichek

Appellants Shamell Roberson and her husband Joe Roberson sued Robert Lee Johnson and his employer Sunoco Partners Lease Acquisition & Marketing, LLC for damages they alleged were caused by Johnson's negligence in a car accident. A jury found that Johnson was not negligent, and the trial court rendered a take-nothing judgment on the Robersons' claims. In this appeal, the Robersons contend the evidence is factually insufficient to support the finding of no negligence and complain of alleged evidentiary and jury-charge error. We affirm.

## Background

At about 3:00 a.m. on February 12, 2018, Shamell Roberson was driving to work in a Toyota Camry on US Highway 190/State Highway 6 near College Station when she hit a black cow in the roadway. She had not seen the cow and, at the time, did not know what she hit. She pulled over to the right shoulder and stopped. Johnson was driving a commercial truck hauling a tanker on the same highway in the same direction as Roberson. The parties stipulated at trial that Johnson was in the course and scope of his employment with Sunoco at the time. When Johnson first saw Roberson's car, it was in the shoulder and he was in the right lane of the two-lane highway. He moved to the left lane. Johnson then also hit a black cow that was in the road in front of him. He lost control of his truck and crashed into Roberson's car. Evidence showed the front of the commercial truck hit the back of Roberson's Toyota at an angle at a rate of about 50 miles per hour. Roberson was badly injured in the crash.

Roberson alleged Johnson was negligent for various reasons, including failing to drive at a speed safe for the conditions presented, failing to timely apply the brakes to avoid the collision, and by failing to take appropriate evasive measures.[1] She also alleged Johnson violated various traffic laws and regulations, which constituted

---

[1] Although there are two appellants/plaintiffs in this case, Shamell Roberson and her husband, and two appellees/defendants, Johnson and his employer Sunoco, for the sake of simplicity we will generally refer to just the two drivers involved in the accident, Roberson and Johnson.

negligence per se. One of the provisions allegedly violated was 49 C.F.R. § 395.3(b), which sets limits on the hours a driver of a commercial motor vehicle can drive in a certain period. In addition, Roberson alleged Sunoco was vicariously liable for Johnson's negligence.[2] Before trial, the trial court granted summary judgment in favor of Johnson on Roberson's claims for negligence per se.

Upon the motion of Sunoco and Johnson, the trial court designated Circle X Land and Cattle Co., a cattle ranch near the accident site, as a responsible third party. They alleged Circle X owned the cattle that escaped onto the highway and that Circle X's negligence contributed to the collisions. At trial, a Circle X representative denied that the cows involved belonged to them.

The jury charge asked whether the negligence of Johnson, Roberson, or Circle X proximately caused the occurrence in question. In a non-unanimous verdict, eleven jurors answered "no" for each person or entity. The trial court rendered judgment on the jury's verdict. Roberson filed a motion for new trial which was overruled by operation of law. This appeal followed.

## Factual Sufficiency Challenge

In her first issue, Roberson challenges the factual sufficiency of the evidence to support the jury's finding that Johnson was not negligent. She argues the finding

---

[2] Roberson brought direct negligence claims against Sunoco for negligent entrustment, retention, hiring, supervision, and training. She also brought claims against several other defendants who allegedly owned or controlled the cattle involved in the incident. These claims and parties are not part of this appeal.

is against the great weight and preponderance of the evidence and asks us to reverse and remand for a new trial.

In reviewing Roberson's assertion that the evidence is factually insufficient to support the jury's no-negligence finding, this Court considers and weighs all the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We can set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* We must not substitute our judgment for that of the factfinder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The jury is the sole judge of the credibility of the witnesses. *Id.*

Roberson called Johnson as an adverse witness. He testified his visibility was clear at the time of the accident; there was no fog, rain, or ice on the roadway that night. He first saw Roberson's vehicle from about a half a mile away. Johnson had his high beams on, but switched to low beams because he did not want to blind Roberson. Roberson was parked in the right shoulder, but part of her car was in the right lane. Roberson's brake lights were on, but her hazard lights were not. Johnson did not see anything to suggest Roberson had a collision. Johnson's truck was on cruise control set at 70 miles per hour, which was the speed limit. Johnson testified that when he saw Roberson's vehicle, he immediately moved over to the left lane "just to play it safe" and "give [her] car cushion." He decelerated the cruise control as he got closer to Roberson's car. Johnson then saw something big and black in the

left lane of the road in front of him, but did not know what it was. He testified that he braked when he saw it, but did not learn it was a cow until after the accident. He hit the cow because he had no other option. He braced himself, grabbed the steering wheel as tight as he could, and drove straight through it. It was what he had been trained to do—slow down as much as possible, but drive through it. If he moved to the right to avoid the cow, he ran the risk of hitting Roberson head on. If he moved to the left, he might have gone into oncoming traffic. There were only fractions of a second between when he saw the cow until he hit it. Once he hit the cow, he pushed in on both the brake and clutch. The steering wheel went "all the way over to the right." Then there was another impact as he hit Roberson's vehicle. Johnson then went down a hill and was able to stop the truck. He checked on Roberson and called 911. Johnson often traveled that stretch of highway for work and had never seen cows in the roadway before. He agreed his testimony that he braked before hitting the cow did not match the computer data from his truck.

Johnson had worked the night shift for 15 to 20 years. The shift he was working at the time of the accident started at 5 p.m. on February 11. When the accident happened at 3 a.m., he was on his way to load the empty tank he was pulling with crude oil. Johnson's job was not one that involved constant driving. He typically drives for about an hour at a time, then arrives at a site and gets out of the truck for about 45 minutes. During the 8 hours prior to the accident, he was "on duty" or working, but not continually driving.

On February 10, Johnson was on duty and driving for 10 hours and 23 minutes. On February 9, he was on duty and driving for 7 hours and 24 minutes. On February 8, he was on duty and driving for 2 hours and 42 minutes. On February 7, he was on duty and driving 10 hours and 46 minutes. On February 6, he was on duty and driving 12 hours and 30 minutes. On February 5, he was on duty and driving 10 hours and 26 minutes. Johnson testified that two or three days before the collision, he had a "reset period" when he was off duty for more than 35 hours. He testified he was well rested that night and it was unfair to suggest he had been working too many hours. From February 5 to February 12, Johnson was on duty and driving 75 hours.

Johnson spoke to State Trooper Kameron Yellin at the scene after the crash. He told him that when he saw Roberson's vehicle, he started slowing down. Trooper Yellin's crash report indicated that the animal on the road was the sole contributing factor to the accident.

Each side presented an accident reconstructionist who reviewed data from different sources on the commercial vehicle Johnson drove. Roberson's witness, Danny Phillips, testified that Johnson approached the crash area with his cruise control set to 70 mph. His speed then abruptly changed to 61 mph, disengaging the cruise control. At the same time, Johnson's steering wheel, which had been straight, moved clockwise about 344 degrees. According to Phillips, Johnson never applied his brakes meaningfully from his abrupt speed change to the time his vehicle came

to a stop. Phillips also said that after the speed change, Johnson applied "nearly 100 percent throttle during the majority of his travel" until he came to a rest. Phillips testified this data indicated "pedal confusion," which is hitting the gas when one thinks they are hitting the brake. Phillips testified the data showed Johnson did not apply the brakes until about 8 seconds after the collision and it was a "very momentary blip."

Roger Allen, an expert in commercial trucking, reviewed the crash report, discovery, exhibits, and the electronic data. In evaluating Johnson's driving, Allen also considered the Texas Commercial Motor Vehicle Driver's Handbook and the Federal Motor Carrier Safety Regulations which both apply to commercial drivers like Johnson. He agreed the data from the truck showed Johnson did not apply his brakes until 8 seconds after the crash. According to Allen, Johnson was not acting as a safe and prudent commercial driving prior to the crash. Allen cited Johnson's failure to reduce his speed when he saw Roberson's car on the side of the highway. He also testified Johnson was "overdriving his headlights." He explained that Johnson could see 250 feet in front of him with his headlights on, but could not bring the vehicle to a stop in that distance. On cross-examination, Allen acknowledged that even if Johnson had been driving 50 mph, he still would not have been able to stop in 250 feet. Allen agreed that if there were no cows on the highway that night there would not have been a crash. He further agreed Johnson's decision to maintain

his lane when he saw the cow was reasonable and that it was not possible for Johnson to control his vehicle after hitting the cow.

Robert Swint was Johnson's accident reconstructionist. While Roberson's expert Phillips relied solely on electronic data from the vehicles involved, Swint's scope was broader. His office visited the scene within 12 hours of the accident and looked at the physical evidence, including scraping and tire marks on the road, and GPS data. Swint indicated that the vehicle data alone does not provide "precise accident reconstruction." Swint testified the electronic data from the truck needs to be evaluated in conjunction with the physical evidence on the highway. Even the manufacturers of the data equipment state that it alone is not accurate when trying to determine what happened in a collision.

Swint determined that Johnson's change in speed from 70 to 61 mph occurred before he collided with the cow. According to Swint, at the time Johnson's steering wheel turned 344 degrees upon hitting the cow, his truck was going approximately 58 mph, not almost 70 mph like the data indicated. Swint testified the accident was beyond Johnson's control. He could not see the cow in time to react and stop. Had the cow not been in the roadway, this accident would never have happened.

Jeffrey Andre, an expert in human visual science, testified that no driver in Johnson's situation should have been expected to see the cow in time to avoid a collision. The cow was virtually invisible.

Roberson argues no reasonable juror would fail to find negligence when the

evidence showed Johnson was aware of Roberson's vehicle on the shoulder and determined he should switch lanes, but maintained his 70 mph speed and did not turn on his high beams. Instead of turning the vehicle, Johnson ran straight into the cow. Further, he did not apply his brakes until 8 seconds after impact with the cow.

Under the appropriate standard of review, we must consider all the evidence. Even though there was nothing to indicate Roberson had been in an accident, Johnson moved to the left lane when he saw her to "play it safe" and give her car "some cushion." He was driving the speed limit with his cruise control on. Although Roberson's expert Phillips said the vehicle data showed Roberson did not slow down before hitting the cow, there was testimony to the contrary. Johnson testified that when he saw Roberson's car he started slowing the truck down by using his finger to decelerate the cruise control. Swint, whose analysis was broader than Phillips', corroborated Johnson's testimony about slowing down. His accident reconstruction showed there was some type of braking from Johnson's vehicle prior to the impact with the cow. According to Swint, Johnson was driving about 10 mph slower than the data showed when he hit the cow. Although the recording device indicated Johnson did not apply the brakes until after the collision, Swint testified the vehicle data must be considered with physical evidence. Further the black cows were virtually invisible in the middle of the night. Andre testified no driver should have been expected to see the cow until it was about 50 feet away. Johnson testified he did not attempt to swerve to avoid hitting the cow because he was trained to maintain

his lane and drive through it. Roberson's own expert agreed it was reasonable for Johnson to maintain his lane and drive through the cow instead of attempting to turn left or right. After Johnson hit the cow, his truck's front axle and right tire were compromised, causing the steering wheel to turn 344 degrees to the right and hit Roberson's car. Johnson did not have control over his truck to avoid hitting Roberson.

There was conflicting evidence on the issue of whether Johnson was negligent, most significantly on the issue of whether Johnson slowed his truck down when he saw Roberson on the side of the road. It is not our role to substitute our judgment for that of the jurors. We must defer to the jury's determination of the credibility of the witnesses and other evidence. The no-negligence finding is not against the great weight and preponderance of the evidence. We overrule Roberson's first issue.

## Exclusion of Evidence

Next, Roberson contends the trial court erred in excluding evidence of Johnson's "driver's logs, the hours-of-service regulation, and Sunoco's company policies." Roberson argues this evidence would have shown that at the time of the accident Johnson had driven more hours that week than Sunoco policy permitted and should not have been driving. We review a trial court's decision to exclude evidence for an abuse of discretion. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020).

–10–

***Driver's Logs***

The trial court excluded Johnson's "driver's logs," Plaintiffs' Exhibits 30 and 73, at a pretrial hearing. Although we have been unable to locate these exhibits in the record, as described at the hearing, Exhibit 30 is a record of Johnson's driving taken from data on his truck and Exhibit 73 consists of pages from a log book kept by Johnson. Johnson objected that the evidence was irrelevant because the trial court had dismissed Roberson's negligence per se claims and thus Roberson did not have a claim based on any violation of laws regulating maximum driving hours. Roberson argued the logs were still relevant to her ordinary negligence claims. The trial court sustained Johnson's objection.

Roberson's brief does not direct this Court to where in the large record we can find the logs excluded by the trial court, and we have been unable to locate them. This Court does not have a duty to review a voluminous record without guidance from the appellant to determine whether an assertion of reversible error is valid. *Keyes Helium Co. v. Regency Gas Servs., L.P.*, 393 S.W.3d 858, 861 (Tex. App.—Dallas 2012, no pet.). Roberson has not preserved any error in the exclusion of these exhibits for our review. *See id.*; TEX. R. APP. P. 38.1(i) (brief must contain appropriate citations to record).

In addition, even if Roberson had preserved error and the trial court erred in excluding Exhibits 30 and 73, any error was harmless. *See* TEX. R. APP. P. 44.1(a)(1). As detailed earlier in this opinion, Johnson testified about the specific

number of hours he worked each day in the days leading up to the crash. A handwritten summary of the hours Johnson testified about was also admitted into evidence. Because the excluded exhibits were cumulative of similar evidence showing how much Johnson drove in the days before the accident, any error in excluding the logs did not cause the rendition of an improper judgment. *See Gunn v. McCoy*, 554 S.W.3d 645, 668–69 (Tex. 2018).

### *Sunoco Policies*

Roberson also complains about the exclusion of "hours-of-service regulations" and Sunoco's company policies. It is unclear what hours-of-service regulations Roberson complains were excluded. She directs us to two offers of proof, but they both involved Sunoco's policies. To the extent the hours-of-service regulations are something other than these policies, Roberson has waived any error in their exclusion by failing to adequately brief this issue. *See* TEX. R. APP. P. 38.1(i) (brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and record).

The offers of proof regarding Sunoco company policy were made near the end of trial through Johnson's visual perception witness Jeffrey Andre and Johnson himself. Roberson's counsel showed them each a copy of Sunoco's Crude Trucking Driver Training Manual. The witnesses stated that one of the manual's requirements was that no driver was allowed to drive if on duty 60 hours in any 7 consecutive days

–12–

or 70 hours in any 8 consecutive days.[3]  Johnson was required to abide by the manual when driving for Sunoco.  Andre stated he did not analyze whether fatigue played a role in Johnson's reaction time because it was not relevant.  No driver, no matter how alert, could have seen the cow from a distance greater than 50 feet.

Johnson objected to the offer of proof as irrelevant.  He argued the time issues had been addressed with the chart summarizing his hours and that the manual did not set any relevant legal standard.  The trial court ruled the evidence was not admissible.

Roberson contends the trial court should have allowed the jury to hear that Johnson should not have been driving at the time of the accident per Sunoco rules.  Roberson also argues the policies would have shown Johnson was fatigued at the time of the accident because he had driven more than allowed.  We cannot conclude the trial court abused its discretion in excluding evidence of Sunoco's policies on driving hours.  A company's internal policies, taken alone, do not establish the standard of care in a negligence case.  *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 92 (Tex. 2004); *Discount Tire Co. of Tex., Inc. v. Cabanas*, 553 S.W.3d 566, 576 n.2 (Tex. App.—San Antonio 2018, pet. denied).  On the issue of fatigue, Roberson's offer of proof included testimony from Andre that fatigue was not

---

[3] These restrictions are the same as those found in the code of federal regulations and formed the basis for one of Roberson's negligence per se claims dismissed on summary judgment.  *See* 49 C.F. R. § 395.3(b).

relevant to the case. Under these circumstances, the trial court did not abuse its discretion in determining the Sunoco policies in question were not relevant.

Even if it was error to exclude evidence of Sunoco's driving policies, any error was harmless. Roberson wanted the jury to know about the policy to establish that Johnson was not supposed to be driving at the time of the accident and may have been fatigued. But Roberson did not present evidence or make an offer of proof to show Johnson was in violation of the policy. There was uncontroverted testimony from Johnson that he took a 35-hour break during the week and was not in violation of the policy. Any error in excluding the evidence did not cause the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). We overrule Roberson's second issue.

**Jury Charge**

Finally, in her third issue, Roberson contends the trial court "abused its discretion by submitting multiple inferential rebuttal instructions—each unsupported by the evidence—and the error probably caused the rendition of an improper verdict." Question 1 was a broad-form question on negligence. It asked the jury if the negligence of Johnson, Circle X, or Roberson proximately caused the injury in question. In connection with this question, the jury was given instructions on emergency, unavoidable accident, and new and independent cause. Roberson contends that because each of these inferential rebuttal defenses was predicated on the same thing—the cows on the highway—the trial court erred in giving all three

–14–

instructions. In addition, although the phrasing of Roberson's third issue asserts all three inferential rebuttal instructions were improper, she argues there was no evidence in the record to support only the instruction on new and independent cause.

An inferential rebuttal defense operates to rebut an essential element of the plaintiff's case by proof of other facts. *Dillard v. Texas Elec. Co-op*, 157 S.W.3d 429, 430 (Tex. 2005). The purpose of these instructions is to advise the jurors, in the appropriate case, that they do not have to place blame on a party to the suit if the evidence shows that conditions beyond the party's control caused the accident in question or that the conduct of some person not a party to the litigation caused it. *Id.* at 432.

Here, following the definition of "negligence," the trial court gave the following instruction on "emergency":

> A person is not negligent if confronted by an "**emergency**." An emergency is circumstances arising suddenly and unexpectedly, which was not proximately caused by any negligence on his/her part and which, to a reasonable person, requires immediate action without time for deliberation. When confronted by an emergency, his/her conduct in such an emergency is not negligence or failure to use ordinary care if, after such emergency arises, s/he acts as a person of ordinary prudence would have acted under the same or similar circumstances.

Then, after the definition of "proximate cause," the charge instructed the jury on "unavoidable accident" and "new and independent cause":

> A person is not negligent if an accident is an "**unavoidable accident**," that is, an event not proximately caused by the negligence of any party to the occurrence.

–15–

"**New and independent cause**" means the act or omission of a separate and independent agency, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question and thereby becomes the immediate cause of such occurrence.

The test for determining whether a party has preserved a complaint of jury-charge error for appellate review is whether the party (1) timely and plainly made the trial judge aware of the complaint, and (2) obtained a ruling. *JNM Express, LLC v. Lozano*, 688 S.W.3d 327, 333 (Tex. 2024). Here, each side presented a proposed charge to the trial court. Both proposals included instructions on emergency, unavoidable accident, and new and independent cause. At oral argument before this Court, Roberson's counsel represented that they later abandoned those definitions, but did not submit a new proposed charge.

At the charge conference, Roberson made the following objection to Question 1:

[T]here's no evidence of sudden emergency. Mr. Johnson confirmed that he was not confronted with an emergency. The instruction's, therefore, improper. The instruction is also improper when combined with the unavoidable accident and new independent cause instruction because at this point it becomes an impermissible comment on the weight of the evidence.

The trial court overruled Roberson's objections.

The objections made at the charge conference did not plainly make the trial judge aware of the complaints Roberson now raises. The objections involved only the instruction on "emergency." Although Roberson included an identical

–16–

emergency instruction in her proposed charge, she argued the evidence did not raise the issue of emergency. She also argued that an instruction on emergency was improper in connection with the instructions on unavoidable accident and new and independent cause. The implication was that it was okay to instruct on both unavoidable accident and new and independent cause, but not on emergency as well. This is different from the issue raised on appeal in which Roberson contends the trial court should not have given all three instructions because they were all based on the same thing, the cows on the road. Nor did Roberson object on grounds that new and independent cause was not raised by the evidence. Also, Roberson's appellate brief contains two just sentences regarding why it was improper to give a new-and-independent-cause instruction, and the argument is not supported by any legal authority. *See* TEX. R. APP. P. 38.1(i). We conclude Roberson has not preserved her jury-charge error issues for our review.[4]

Even if we consider the merits of Roberson's arguments, there is no error. A trial court has broad discretion in constructing the charge, so long as it is legally correct. *Emerson Elec. Co. v. Johnson*, 627 S.W.3d 197, 208 (Tex. 2021). An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence. *Columbia Rio Grande Healthcare, L.P.*

---

[4] At oral argument, Roberson asserted unavoidable accident was not raised by the facts in the case because someone who was not a "party to the occurrence" let the cows out. This argument was not briefed and has been waived. TEX. R. APP. P. 38.1(i); *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 215 (Tex. 2020).

–17–

*v. Hawley*, 284 S.W.3d 851, 855 (Tex. 2009). We will not reverse a jury verdict based on charge error unless the error probably caused the rendition of an improper judgment. *Id.* at 856.

Roberson argues the new-and-independent-cause instruction was not supported by the evidence because Johnson's collision with her car was "the last event on the roadway." New and independent cause is a component of the proximate cause issue. *Id.* A new and independent cause of an occurrence is the act or omission of a separate and independent agent, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question. *Id.* A new and independent cause alters the natural sequence of events, produces results that would not have otherwise occurred, is an act or omission not brought into operation by the original wrongful act of the defendant, and operates entirely independently of the defendant's allegedly negligent act or omission. *Id.* at 857.

Under the facts of this case, we cannot conclude the trial court abused its discretion in instructing the jury on new and independent cause. Roberson alleged in part that Johnson was negligent because when he first saw her car on the shoulder, he did not slow down. But a jury could have determined that the cow in Johnson's lane was a new and independent cause that produced results that would not otherwise have occurred. It was undisputed that the accident would not have occurred if the cow Johnson hit was not there.

We turn to Roberson's argument that it was error to give multiple inferential rebuttal instructions. She has not cited any law, and we have found none, for the proposition that it is error to give multiple inferential rebuttal instruction. She relies on *Dillard v. Texas Elec. Co-op*, which also involved cows in the road and inferential rebuttal instructions. *Dillard*, however, presented the inverse of this case. The issue on appeal was whether the trial court erred in giving just one inferential rebuttal instruction. In *Dillard*, a truck driver was delivering a load of utility poles for his employer TEC when he encountered cows on the highway at night. 157 S.W.3d at 430. Unable to stop without losing control of his vehicle, the driver hit a cow, leaving it dead in the road. A few minutes later another driver, Brown, hit the dead cow with her car. She crashed into another vehicle, killing one of its occupants, Dillard. *Id.* In a suit brought by Dillard against TEC and its driver, TEC asked for two inferential rebuttal instructions, unavoidable accident and sole proximate cause. *Id.* at 431. The trial court instructed only on unavoidable accident. *Id.*

TEC argued on appeal that it was entitled to both instructions because there was evidence the accidents may have been caused by a condition beyond its control (the cattle) or by someone not a party to the litigation (either the cattle owner or Brown). *Id.* at 432. But TEC had not argued at trial that Brown was to blame for the accident, and the Texas Supreme Court held that the unavoidable accident instruction given was sufficiently broad to include "all shades of TEC's inferential rebuttal theories concerning the cattle." *Id.* at 433. The court stated that "giving

multiple instructions on every possible rebuttal inference has the potential to skew the jury's analysis." *Id.*

Despite this language, *Dillard* does not impose a bright-line rule against giving multiple inferential rebuttal instructions. Given the discretion afforded to trial courts in preparing the jury charge, we cannot conclude the trial court erred in giving multiple inferential rebuttal instructions. All three were raised by the evidence in this case, and Roberson initially asked for all three instructions in her proposed charge. At the charge conference, Roberson only expressed a problem with giving the emergency instruction in addition to the other two.

Roberson argues that because multiple inferential rebuttal instructions were given, the jurors may not have all agreed on one defensive theory. But *Dillard* instructs that the jurors need not have agreed on what person or thing caused an occurrence, as long as they agreed it was not the defendant. *Dillard*, 157 S.W.3d at 434. In other words, under broad-form submission rules, jurors need not agree on every detail of what occurred so long as they agree on the legally relevant result. *Id.*

Even if the trial court erred in giving multiple inferential rebuttal instructions, we conclude the error did not result in an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). There was ample evidence that Johnson did not drive in a negligent manner, even without consideration of the inferential rebuttal defenses. Even though he had no reason to believe Roberson had been in an accident, he cautiously moved to the left lane when he saw her to give her cushion. Evidence showed Johnson

–20–

decelerated his cruise control upon seeing Roberson. His decision to drive through the cow instead of swerving was based on his training and was reasonable. We overrule Roberson's third issue.

## Cumulative Error

Finally, at oral argument, Roberson's counsel asserted that even if none of the issues presented amounts to reversible error, together they present cumulative error. Roberson did not make a cumulative error argument in her brief, therefore it has been waived. TEX. R. APP. P. 38.1(i); *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 215 (Tex. 2020) (courts of appeals have authority to deem unbriefed point waived). Even so, there is no cumulative error here. Under the doctrine of cumulative error, where no one instance of error is sufficient to call for a reversal, all instances taken together may do so. *Sproles Motor Freight Lines, Inc. v. Long*, 168 S.W.2d 642, 645 (Tex. 1943). To support reversal based on cumulative error, a complaining party must show that based on the record as a whole, but for the alleged errors, the jury would have rendered a verdict favorable to it. *Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 570 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex. 1998). When, as here, there are no errors to be considered as a combined whole for purposes of evaluating harm, we reject cumulative error arguments. *In re BCH Dev., LLC*, 525 S.W.3d 920, 930 (Tex. App.—Dallas 2017, orig. proceeding).

Accordingly, we affirm the trial court's judgment.


/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

220805F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

SHAMELL ROBERSON AND
JOEL ROBERSON, Appellants

No. 05-22-00805-CV     V.

SUNOCO PARTNERS LEASE
ACQUISITION & MARKETING,
LLC, AND ROBERT LEE
JOHNSON, Appellees

On Appeal from the 192nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-18746.
Opinion delivered by Justice
Reichek. Justices Partida-Kipness
and Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees SUNOCO PARTNERS LEASE ACQUISITION & MARKETING, LLC, AND ROBERT LEE JOHNSON recover their costs of this appeal from appellants SHAMELL ROBERSON AND JOEL ROBERSON.

Judgment entered this 30th day of August, 2024.